```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND
                                   :
UNITED STATES OF AMERICA
                                   :
    v.                             :   Criminal No. DKC 12-0043
                                       Civil Action No. DKC 16-0917
                                   :
EVERETT F. JENKINS
                                   :
```

**MEMORANDUM OPINION**

Everett F. Jenkins has two matters pending, a motion under 28 U.S.C. § 2255 to vacate conviction and a motion for compassionate release.

On November 13, 2012, Mr. Jenkins was sentenced to 180 months imprisonment on the charge of possession of a firearm by a person convicted of a crime punishable by imprisonment for a term exceeding one year under 18 U.S.C. § 924(g)(1). He was sentenced pursuant to 18 U.S.C. § 924(e) as an Armed Career Criminal based on three prior convictions: second degree murder, attempted distribution of heroin, and distribution of heroin.

His initial § 2255 motion was filed pro se in March 2016 (ECF No. 31), but it was stayed as were many similar cases. (ECF Nos. 33 and 34). Counsel filed a supplement during the stay. (ECF No. 35). Then, on June 24, 2019, Counsel filed a motion to amend the petition (ECF No. 37) and correspondence with additional authority (ECF No. 39). The Government responded on February 18, 2020 (ECF

No. 42) and Mr. Jenkins replied on March 4, 2020 (ECF No. 43). A further supplemental motion was filed on June 9, 2020, based on *Rehaif v. United States*, 139 S.Ct. 2191 (2019)(ECF No. 46), resulting in a further stay. Recently, that supplement was withdrawn. (ECF Nos. 62 and 63). Mr. Jenkins also filed a motion for compassionate release on March 22, 2021 (ECF No. 47), which is now fully briefed. (ECF Nos. 58, 60).[1] Finally, Mr. Jenkins filed correspondence with additional supplemental authority regarding the pending habeas petition on August 17, 2021 (ECF No. 61), which prompted a response from the government (ECF No. 68), and a reply by Mr. Jenkins. (ECF No. 69).

For the following reasons, the motion pursuant to 18 U.S.C. § 2255 will be DENIED and the motion for compassionate release will be GRANTED.

I.  **Motion to Vacate**

   A.  **Standard of Review-§ 2255**

To be eligible for relief under § 2255, a petitioner must show, by a preponderance of the evidence, that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such

---

[1] The motions for leave to file excess pages (ECF No. 56) and to seal (ECF Nos. 49, 57, and 59) are GRANTED. The personal and confidential information should not be revealed except as recited herein.

sentence, or that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).

### B. Analysis

As applicable at the time of Mr. Jenkins sentencing, in order to qualify as an Armed Career Criminal, a person must have been convicted of at least three qualifying prior crimes that were either "a violent felony" or "a serious drug felony." At issue presently is whether one of the prior convictions used as a basis was properly considered to be a violent felony. In *Johnson v. United States*, 135 S.Ct. 2551 (2015), the Court invalidated the so-called residual clause of the definition for a violent felony as being unconstitutionally vague. Thereafter, in order to qualify, a prior conviction had to meet the definition the other portion of the statute, namely "has as an element the use, attempted use, or threatened use of physical force against the person of another." In the years since, courts have grappled with that portion of the definition as it applies to myriad circumstances. Petitioner contends that second degree murder, as defined under District of Columbia law, does not meet that definition.

In *Borden v. United States*, 141 S.Ct. 1817, 1822 (2021), the question was whether a criminal offense can count as a "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), so as to trigger a mandatory minimum, if the underlying

predicate offense on which that enhancement is based requires only a mens rea of recklessness.  Specifically, the issue was whether a Tennessee conviction for aggravated assault, which can be committed recklessly, has as an element the use of physical force against the person of another.

The Court reversed the judgment but did not issue a majority opinion.  The plurality opinion, authored by Justice Kagan for the four justice plurality, found that mere recklessness did not suffice to constitute a "violent felony:"[2]  "The phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual. Reckless conduct is not aimed in that prescribed manner." *Id.* at 1825 (plurality opinion).  Specifically, Justice Kagan reasoned that modern criminal statutes require one of four basic types of mental states "in descending order of culpability: purpose, knowledge, recklessness, and negligence."  *Leocal* had found that purely negligent conduct did not evince a culpable enough state of

---

[2] Justice Thomas wrote the sole concurrence that found that the "particular provision at issue here does not encompass petitioner's conviction for reckless aggravated assault" but declared he was doing so solely to avoid "aggravating a past error" even though the "consequences" of the court's ultimate decision was "at odds with the larger statutory scheme."  *Id.* at 1834 (Thomas, J., concurring).  He would focus on the "use of physical force" portion of the statute, rather than the "against the person of another" phrase.  Four dissenters would have ruled that the ACCA's use-of-force clause encompasses reckless offenses. *Id.* at 1857 (Kavanaugh, J. dissenting).

4

mind to satisfy the definition of "crime of violence" under 18 U.S.C. § 16(a), "a statutory definition relevantly identical to ACCA's elements clause." *Id.* at 1824 (quoting *Leocal*, 543 U.S. at 125). The plurality declared that it was expressly taking up the question the Court had "reserved" in *Leocal* and *Voisine v. United States*, 579 U.S. 686 (2016) (finding reckless domestic assault qualified as a "misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9)). *Id. at* 1825.

Acts done recklessly, Justice Kagan explained, were done when a person "consciously disregards a substantial and unjustifiable risk" associated with that conduct. The ACCA, on the other hand, "set out to identify . . . the sort of offender who, when armed, 'might deliberately point the gun and pull the trigger.'" *Id.* at 1830 (quoting *Begay v. United States*, 553 U.S. 137, 145-46 (2008)). She subsequently identified other laws, such as DUI offenses, that prohibit conduct demonstrating a "degree of callousness toward risk," but noted that "[h]owever blameworthy, the reckless (or negligent) conduct involved in such a crime is 'far removed' from the 'deliberate kind of behavior associated with violent criminal use of firearms.'" *Id.* (quoting *Begay*, 533 U.S. at 145-47). There was "no reason" therefore to find that such "reckless offenses [] precipitate the statute's enhanced sentences." *Id.* at 1830-31.

Justice Kagan recognized that there may be laws whose mens rea go beyond mere recklessness, by requiring a somewhat more

5

culpable state of mind, such as depraved heart or extreme recklessness, a state of mind just short of, if not akin to, acting knowingly. The plurality, however, left consideration of those crimes for another day. *Id.* at 1825 n.4.[3] She did, however, highlight a number of potential offenses she felt were clearly on the "reckless" side of the line; for example, she asked the reader to "[i]magine" a driver who was, "late to work, decides to run a red light, and hits a pedestrian whom he did not see." That person "has consciously disregarded a real risk, thus endangering others," but "has not used force 'against' another person" to be swept up in the definition of a violent felony under the ACCA. *Id.* at 1827.

Thus, after *Borden*, a crime requiring only recklessness cannot be a predicate under the elements clause of § 924(e), or, by extension, § 924(c), although the precise reason is not resolved. Mr. Jenkins contends that his prior conviction for second degree murder no longer qualifies.

Under District of Columbia law at the time of his conviction, second degree murder required proof that (1) the defendant inflicted an injury upon the deceased from which the deceased dies,

---

[3] While the dissent vehemently disagreed with the outcome, it seemed to agree that criminal statutes existed on a continuum of culpability, as "the line between knowledge and recklessness can be thin," and one that criminal law "ordinarily does not draw" a line between. *Id.* at 1845 (Kavanaugh, J., dissenting).

6

(2) the defendant acted with malice, and (3) that the defendant did not act in the heat of passion caused by adequate provocation. Relevant caselaw establishes that this definition includes depraved heart murder:

> Although not all jurisdictions are in agreement on the matter, *see* 2 W. LaFave & A. Scott, *supra* note 6, § 7.4, at 200, in the District of Columbia, such depraved heart malice exists only where the perpetrator was subjectively aware that his or her conduct created an extreme risk of death or serious bodily injury, but engaged in that conduct nonetheless.[12] Under our formulation, malice "may be found 'where conduct is reckless and wanton, and a gross deviation from a reasonable standard of care, or such a nature that a jury is warranted in inferring that the defendant was aware of a serious risk of death or serious bodily harm.'" *Logan, supra,* 483 A.2d at 671 (citation omitted). In such circumstances, the defendant's behavior is said to manifest a "wanton disregard of human life." *Dixon, supra* note 12, 135 U.S.App.D.C. at 406 n. 8, 419 F.2d at 293 n. 8; *see also Powell, supra* note 12, 485 A.2d at 603 (defendant's conduct "manifested a disregard for the lives and safety of others").[13]

---

[12] The fact that a reasonable person would have been aware of the risk will not sustain a finding of malice, though it may sustain a conviction for manslaughter. *See Powell v. United States*, 485 A.2d 596, 605 (D.C.1984) (Rogers, J., dissenting). As Judge Leventhal explained in *United States v. Dixon*, 135 U.S.App.D.C. 401, 419 F.2d 288 (1969), "[t]he difference between that recklessness which displays depravity and such extreme and wanton disregard for human life as to constitute 'malice' and that recklessness that amounts only to manslaughter lies in the quality of the awareness of the risk." *Id*. at 405–06, 419 F.2d at 292–93 (Leventhal, J., concurring)

> (cited with approval in *Thomas v. United States*, 557 A.2d 1296, 1299 (D.C.1989)). Along similar lines, we stated in *United States v. Bradford*, 344 A.2d 208, 215 n. 22 (D.C.1975): "In terms of the actor's awareness of the risk to life, if he is aware of risk, the crime is murder and not involuntary manslaughter. If he is not aware ... and he should have been aware, the crime is involuntary manslaughter."
>
> [13] Examples of conduct rising to the level of depraved heart malice include:
> - firing a bullet into a room occupied, as the defendant knows, by several people; starting a fire at the front door of an occupied dwelling; shooting into ... a moving automobile, necessarily occupied by human beings ...; playing a game of "Russian roulette" with another person....; selling "pure" (i.e., undiluted) heroin.
> - 2 W. LaFave & A. Scott, supra note 6, § 7.4, at 202–03 (footnotes omitted). An example of "depraved heart" murder in this jurisdiction appears in *Powell v. United States*, supra, 485 A.2d 596. There, the defendant disregarded a police officer's signal to stop his car and pull over. He then led police on a harrowing high speed chase, sped through a tunnel at a speed in excess of ninety miles per hour, turned onto a congested exit ramp blocked by vehicles, and struck the rear of another vehicle, killing one of its occupants. Id. at 598. The defendant was convicted of second-degree murder on the theory that his conduct "showed a wanton, reckless disregard for life." *Id*. at 601.

*Comber v. United States*, 584 A.2d 26, 39 (D.C. 1990). In light of the clear reservation of the question whether depraved heart murder qualifies as a violent felony by the plurality in *Borden*, it cannot be said that the second degree murder conviction does not qualify.

Accordingly, Petitioner has not proven that his sentence was imposed in violation of law and the petition pursuant to § 2255 will be denied.

## II. Compassionate Release

### A. Standard of Review

To be eligible for compassionate release, a person must demonstrate extraordinary and compelling reasons for a sentence reduction. Then, using the factors set forth in 18 U.S.C. § 3553(a), the court determines whether a reduction is warranted, and "consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Hudson*, SAG 04-0578, 2021 WL 4951931 (D.Md. Oct. 25, 2021). Certain medical conditions, coupled with the presence of COVID, might qualify, as can the disproportionate length of a sentence. *Id.*

### B. Analysis

In his initial pro se motion, Mr. Jenkins contended he was eligible due to age (60), medical conditions (high blood pressure, low iron), obesity, and his need/desire to care for his 87 year old mother and 92 year old father who are ill. (ECF No. 47). Counsel later supplemented the motion (ECF No. 50), asserting that he suffers from chronic kidney disease and there are unwarranted disparities with his 15-year sentence. Specifically, counsel asserts that his medical vulnerability to COVID, despite his vaccination status, constitutes an extraordinary and compelling

9

reason for sentence reduction, and that the ACCA mandatory 15-year sentence also constitutes such a reason due to its disparity with current national trends and sentences imposed more recently for even more aggravated conduct.  Counsel also points out his post-offense rehabilitation.  With regard to the § 3553(a) factors, counsel stresses that he has served nearly three quarters of his sentence, has been imprisoned during a public health crisis, engaged only in non-violent conduct, has made a commitment to rehabilitation, and has a stable release plan.

The Government responded (ECF No. 58), disputing the presence of any extraordinary or compelling reasons, contending that Mr. Jenkins' medical conditions do not meet the standard and that there is no unwarranted sentencing disparity.  Moreover, it argues that the § 3553(a) factors weigh against any further reduction, emphasizing his criminal history, the current offense, and his conduct while incarcerated.

The availability of vaccines has blunted the impact of COVID-19, but has not entirely eliminated it as a concern, particularly in detention facilities and prisons.  Petitioner suffers from some underlying medical conditions that could affect the severity of illness should he become infected.  And, as applicable here, while the ACCA statute has not changed, the interpretation of it has.  In part due to the evolving definitions of "violent felony," prosecutors and courts have taken a more lenient stance on its

10

implementation. The seemingly random invalidation of prior convictions, and the open legal question with regard to Petitioner's prior second degree murder conviction, contribute to the presence of extraordinary and compelling circumstances in this case. Petitioner, thus, is eligible for consideration.

After consideration of the § 3553(a) factors, the court concludes that Mr. Jenkins' sentence should be reduced. Mr. Jenkins has served nearly 10 years in prison and has a current projected release date of November 26, 2024. He is 60 years old. The second degree murder conviction occurred in 1982 when he was 21 years old. His other predicate drug felonies occurred in 2003 and 2006 and stemmed, at least in part, from his own struggles with addiction. The offense for which he is incarcerated occurred in 2011 and involved a traffic stop, but no other criminal conduct. He has participated in many programs and classes while incarcerated, including drug treatment. His disciplinary history is not spotless, but far from disqualifying. He plans to live with his parents whose own health problems would make his presence particularly helpful. While serious, his offense was by no means as dangerous as some, and his criminal history was not as troubling as many that qualify for ACCA treatment. He has served a very significant portion of the initial sentence and close to the statutory maximum for a non-ACCA conviction. He has made good use of the available resources in prison and has a structure available

upon release that, along with supervised release, will start him off on the right road.

Accordingly, his motion for compassionate release will be granted. His sentence will be reduced to time served, but stayed for up to 14 days to verify the defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. §§ 2254 or 2255, the court is also required to issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies the petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that "reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003). Where a motion is denied on a procedural ground, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) that jurists of reason would find it debatable whether the petition

states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (internal marks omitted). After review of the record, the court concludes that Petitioner does not satisfy the above standard. Accordingly, a certificate of appealability will not issue. A separate order will follow.

                                             /s/
                                     DEBORAH K. CHASANOW
                                     United States District Judge